FILED

OCT X 5 2012
10-5-12
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

JU

## IN THE UNITED STATES DISTRICT COURT
## FOR NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

12cv 8004

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* CONSTANTINE ZVEREV, and the STATE OF CALIFORNIA, STATE OF ILLINOIS, STATE OF MASSACHUSETTS, and STATE OF NEW YORK, *ex rel.* CONSTANTINE ZVEREV, | Case No 12cv8004 <br> Judge Holderman <br> Mag. Judge Cox <br> Chief Ju <br> Magistra |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | FILED IN CAMERA AND UNDER SEAL PURSUANT TO THE FEDERAL FALSE CLAIMS ACT AND THE FALSE CLAIMS ACTS OF CALIFORNIA, ILLINOIS, NEW YORK AND MASSACHUSETTS AND THE ILLINOIS WHISTLEBLOWER ACT |
| USA VEIN CLINICS OF CHICAGO, LLC; USA VEIN CLINICS, LLC; USA VEIN CLINICS OF BOSTON, LLC; USA VEIN CLINICS, P.C.; USA VEIN CLINIC OF NEW YORK, LLC; USA VEIN CLINICS, INC.; and YAN KATSNELSON, AN INDIVIDUAL, | |
| Defendants. | |

## COMPLAINT

Plaintiff-Relator Constantine Zverev ("Mr. Zverev" or "Relator"), by his undersigned

attorneys, Robin Potter & Associates, P.C. and Wang, Leonard and Condon, P.C., for his Complaint

against Defendants USA Vein Clinics, LLC; USA Vein Clinics of Chicago, LLC; USA Vein Clinics

of Boston, LLC; USA Vein Clinics of New York, LLC; USA Vein Clinics, P.C; USA Vein Clinics,

Inc.; and Yan Katsnelson (collectively, "Defendants") on behalf of the United States of America,

and the States of Illinois, California, New York, and Massachusetts, states as follows:

## NATURE OF THE CASE

1.      This is an action brought under the federal False Claims Act, 31 U.S.C. §3729, *et seq.*

(the "FCA" or "False Claims Act"), as amended by the Fraud Enforcement and Recovery Act of

2009 ("FERA"), the California False Claims Act., Cal. Gov't Code § 12651 *et seq.*, the Illinois Whistleblower Reward and Protection Act, 740 Ill.Comp. Stat.175/1 *et seq.,* the Illinois Whistleblower Act, 740 ILCS 174/1, *et seq.,* the Massachusetts False Claims Act, Mass. Ann. Laws cb.12, § S(A)-(0)*,* the New York False Claims Act, N.Y. State Fin.Law§187 *et seq.*, and under the common law theory of unjust enrichment to recover damages and civil penalties from Defendants on behalf of the United States of America (Collectively "the Government").

2. Pursuant to 31 U.S.C. § 3730(b)(2), Mr. Zverev has provided the Government and the States with a copy of the Complaint and a written disclosure of substantially all material, evidence, and information in his possession.

## INTRODUCTION

3. From at least 2009 to the present and, on information and belief, beginning before 2009, Defendants have intentionally and knowingly billed and submitted, or caused to be billed and submitted, false claims to Medicare and Medicaid. As set forth below, Defendants' actions and/or omissions include, but are not limited to: (1) billing for treatments, procedures, and services that were never rendered; (2) submitting requests for reimbursement of treatments, procedures and services provided by intentional misuse of medical instruments that reduced the effectiveness of the treatment and put the patients at risk; (3) billing for treatments, procedures and services that were not medically necessary; and (4) solicitation of, and billing for, medically unnecessary follow-up procedures.

4. The federal False Claims Act and each of the State Acts (hereafter collectively referred to as the "False Claims Act") prohibits knowingly presenting, or causing to be presented, to the Government a false or fraudulent claim for payment or approval. The False Claims Act

prohibits knowingly making or using a false or fraudulent record or statement to get a false or fraudulent claim paid or approved by the Government. Any person who violates the False Claims Act is liable for civil penalties of up to $11,000 for each violation, plus three times the amount of the damages sustained by the Government.

5.     The False Claims Act allows any person having information about false or fraudulent claims to bring an action on behalf of the Government. Mr. Zverev is an original source of the information alleged herein, pursuant to the False Claims Act, 31 U.S.C. § 3730(e)(4)(b); California False Claims Act, Cal. Gov't Code § 12652(d)(3); Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/4(e)(4)(b); Massachusetts False Claims Act, Mass. Gen. Laws ch. 12 §5A; and the New York False Claims Act, N.Y. State Fin.Law § 188(7), and has provided that information to the Government in advance of filing this action.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the subject matter of this action pursuant to 31 U.S.C. §§ 3730(h) and 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. §§ 3732(a) and 3730(b) and because they transacted business within this district and have committed acts within the district that violated 31 U.S.C. § 3729.

7.     Venue is proper in this Court pursuant to 31 U.S.C. §§ 3732(a), 28 U.S.C. §§ 1391 and 1395(a) because at all times relevant to this Complaint Defendants regularly conducted business within this district and maintained employees and/or offices within this, the Northern District of Illinois. In addition, statutory violations alleged herein occurred in the Northern District of Illinois.

## PARTIES

8.      Mr. Zverev, an Illinois resident, is an information technology analyst.  He earned a

Bachelors of Arts in business from Graceland College in Iowa in 1996.  Mr. Zverev was employed

by Defendants from May 2011 through October 2011 as an information technology and data analyst.

9.      USA Vein Clinics of Chicago, LLC, is an Illinois limited liability corporation located

at 4141 Dundee Road, Northbrook, Illinois, and formed in 2009.  **See Exh. A, attached hereto**.  It

is a medical clinic that provides out-patient health care services to treat venous insufficiency, a

condition affecting the ability of veins to send blood from the legs to the heart, commonly known

as and referred to herein as varicose veins.  Defendant Yan Katsnelson is the only member of the

corporation.  USA Vein Clinics of Chicago seeks reimbursements from Medicare and Medicaid for

services provided to patients.

10.     USA Vein Clinics, LLC, is an Illinois limited liability corporation formed in 2006.

**See Exh. C, attached hereto**.  It is located at 4141 Dundee Rd, Northbrook, Illinois.  It is a medical

clinic that provides health care service to treat varicose veins.  Yan Katsnelson is the only member

of the corporation.  USA Vein Clinics seeks reimbursements from Medicare and Medicaid for

services provided to patients.

11.     USA Vein Clinics of Boston, LLC, is a Massachusetts  limited liability corporation

formed in 2009.  **See Exh. D, attached hereto**.  It is located at 1208B VFW Parkway., Suite 300,

West Roxbury, Massachusetts 02132.  It is a medical clinic that provides health care service to treat

varicose veins.  Defendant Yan Katsnelson is the Manager of the corporation.  USA Vein Clinics

of Boston seeks reimbursements from Medicare and Medicaid for services provided to patients.

12.    USA Vein Clinics, PC, is a Massachusetts professional corporation formed in 2008. **See Exh. E, attached hereto.** It is located at 12 Stonehedge Road, Lincoln, Massachusetts 01773. It is a medical clinic that provides health care service to treat varicose veins. Defendant Yan Katsnelson is the president, treasurer, secretary, and director of the corporation. USA Vein Clinics, P.C., seeks reimbursements from Medicare and Medicaid for services provided to patients.

13.    USA Vein Clinics of New York, LLC, is not listed as a New York corporation but provides health care services to treat varicose veins in New York at 2511 Ocean Avenue, Ste. 102, Brooklyn, New York 11229. USA Vein Clinics of New York seeks reimbursements from Medicare and Medicaid for services provided to patients.

14.    USA Vein Clinics, Inc., is a California corporation formed in 2009. **See Exh. B, attached hereto**. It is located at 5716 Lindenhurst Ave., Los Angeles, California 90036. It is a medical clinic that provides health care service to treat varicose veins. USA Vein Clinics, Inc., seeks reimbursements from Medicare and Medicaid for services provided to patients.

15.    Yan Katsnelson ("Dr. Katsnelson) is an Illinois resident. He is a cardiovascular surgeon licensed to practice medicine in Illinois, Massachusetts and New York. Dr. Katsnelson is the founder of each of the USA Vein Clinic (collectively "USA Vein") entities and manages the day-to-day operations of said entities. As part of that management, Dr. Katsnelson is responsible for all submissions for payment on behalf of each USA Vein entity to the Government.

## THE FALSE CLAIMS ACT

16.    The FCA prohibits knowingly presenting, or causing to be presented, to the federal government a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1) (1986) and

31 U.S.C. § 3729(a)(1)(A) (2009).[1] In addition, the FCA prohibits knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B). The FCA further prohibits knowingly concealing or knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property back to the federal government. 31 U.S.C. § 3729(A)(1)(G). The FCA also prohibits conspiring with another person to defraud the Government by getting a false or fraudulent claim allowed or paid by the Government. 31 U.S.C. § 3729(A)(1)( C ).

17.     The term "knowingly" as used in the FCA means that a person, with respect to information, (I) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b). No proof of specific intent to defraud is required to show that a person acted knowingly under the FCA. *Id.*

18.     31 U.S.C. § 3730(h) of the False Claims Act provides, in relevant part,

>    (1)     Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

---

[1] Congress amended the FCA as a part of the Fraud Enforcement Recovery Act of 2009 ("FERA") on May 20, 2009, making certain amendments retroactive, including 31 U.S.C. § 3729(a)(1)(B). It amended the FCA as part of the Patient Protection and Affordable Care Act on March 23, 2010.

(2)     Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An action under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection.

19.     Any person who violates the FCA is liable for civil penalties up to $11,000 per false claim, as adjusted for inflation, plus three times the amount of damages that the Government sustains as a result of the defendant's actions. 31 U.S.C. § 3729(a).

## REIMBURSEMENT AND CONTROLLING PROVISIONS FOR ENDOVENOUS LASER THERAPY

20.     The United States, through the Department of Health and Human Services (DHHS), administers the Supplementary Medical Insurance Program for the Aged and Disabled established by Part B, Title XVIII, of the Social Security Act under 42 U.S.C. § 1395j-1395w ("Medicare Part B Program"). The objective of the Medicare program is to provide medical insurance for covered services to any person 65 years or older, to certain disabled person, and to individuals with chronic renal disease who elect coverage under the program. DHHS has delegated the administration of the Medicare Program to its component agency, the Centers for Medicare and Medicaid Services ("CMS").

21.     In 1965, the federal government also enacted the Medicaid program. It is a cooperative undertaking between the federal and state governments to help the states provide health care to low-income individuals. The Medicaid program pays for services pursuant to plans developed by the states and approved by the DHHS Secretary through CMS. 42 U.S.C. §§ 1396a(a)-(b). States pay doctors, hospitals, pharmacies, and other providers and suppliers of medical items and services according to established rates. 42 U.S.C. §§1396b(a)(1), 1903(a)(1). The federal

government then pays each state a statutorily established share of "the total amount expended ... as medical assistance under the State plan." See 42 U.S.C. §1396b(a)(1). This federal-to-state payment is known as Federal Financial Participation ("FFP").

22.     As a prerequisite to enrollment as a provider in the Medicaid Program, medical providers are required to enter into provider agreements and must agree, among other things, to comply with federal and state provider participation requirements as a condition of federal and state funding. 42 U.S.C. § 1396a(w).

23.     Part B of the Medicare Program is a 100% federally subsidized health insurance system for disabled persons or persons who are 65 or older. Eligible persons aged 65 or older may enroll in Part B of the Medicare Program to obtain benefits in return for payments of monthly premiums as established by DHHS. The benefits covered by Part B of the Medicare program include medical treatment and services by physicians. An enrolled individual who obtains a covered medical service can either pay for the medical service himself, and request reimbursement of 80% of the reasonable charge, or assign the right to reimbursement to the physician providing the service, who collects as an assignee of the beneficiary under 42 U.S.C. § 1395(b)(3)(B)(ii). The funds to reimburse claims for reimbursement originate from the Medicare Trust Fund.

24.     Medical treatment and services by physicians are generally reimbursable under the Medicare Part B and Medicaid Programs if the services provided are reasonable and medically necessary. The physician or entity seeking reimbursement, however, must meet certain obligation. These obligations include the following duty to:

        a.      Bill Medicare for only reasonable and necessary medical services. 42 U.S.C. § 1395y(a)(1)(A);

b.   Not make false statements or misrepresentations of material facts concerning requests for payment under Medicare. 42 U.S.C. § 1320a-7b(a)(1) & (2); 1320a-7; 1320a-7a;

c.   Provide economical medical services, and then, only where medically necessary. 42 U.S.C. § 1320c-5(a)(1);

d.   Provide evidence that the service given is medically necessary. 42 U.S.C. § 1320c-5(a)(3);

e.   Assure that such services are not substantially in excess of the needs of such patients. 42 U.S.C. § 1320a-7(b)(6) & (8);

f.   Not submit or cause to be submitted bills or requests for payment substantially in excess of the physician's usual charges for the same treatment or services. 42 U.S.C. § 1320a-7(b)(6)(A);

g.   Certify when presenting a claim that the service provided is a medical necessity. 42 U.S.C. § 1395n(a)(2)(B).

25.   More importantly, Medicare and Medicaid specifically excludes from reimbursement "any expense incurred for items or services where such expenses are for cosmetic surgery or are incurred in connection therewith." 42 U.S.C. § 1395y(a)(10).

26.   Reimbursement for Medicare claims is made by the United States through CMS. CMS contractually assigns the task of processing and paying Part B claims from the Medicare Trust Fund to private insurance carriers under 42 U.S.C. § 1395u.

27.   At all times relevant to this Complaint CMS administered the Medicare Part B Program in the States of Illinois, California, New York and Massachusetts through private insurance carriers, or intermediaries. The carriers reviewed and approved claims submitted for medical reimbursement by Medicare providers, including claims submitted or caused to be submitted by the Defendants. The carriers made payment on those claims which appeared to be eligible for reimbursement under the Medicare Part B Program. Medical services claims are paid pursuant to a Medicare reimbursement schedule.

## DEFENDANTS' FRAUDULENT STATEMENTS AND SUBMISSIONS TO MEDICARE AND MEDICAID

28.     USA Vein specializes in a treatment known as Endovascular Laser Therapy ("EVLT"), also called as Endovascular Ablation Therapy ("EVAT"). USA Vein bills Medicare, Medicaid and private insurers for the EVLT procedure using CPT Codes 36478 and 36479. **See Exhs. M and N, attached hereto**.

29.     EVLT is a procedure performed by licensed physicians in which a catheter bearing a laser fiber is inserted into the varicose vein through a small puncture using ultrasound guidance. The laser is then activated while the catheter is slowly withdrawn, resulting in the termination of the vein. The EVLT procedure takes between one and two hours to perform on each vein.

30.     CPT Code 36478 is used to bill for "Endovenous ablation therapy of incompetent vein, extremity, inclusive of all imaging guidance and monitoring, percutaneous, laser; first vein treated." The Medicare and Medicaid reimbursement for services performed by USA Vein pursuant to the CMS physician fee schedule in 2009 was approximately $1400.47, in 2010 was approximately$1396.26, in 2011 was approximately $1,462.68 and in 2012 is approximately $1,448.98. **See Exhs. P - S, attached hereto**.

31.     CPT Code 36479 is used to bill for "second and subsequent veins treated in a single extremity, each through separate access sites." The Medicare and Medicaid reimbursement for services performed by USA Vein pursuant to the CMS physician fee schedule in 2009 for this procedure was approximately $384.11, in 2010 was 394.34, in 2011 was approximately $416.21 and for 2012 is approximately $422.75. **See attached hereto as Exhs. P - S**.

32.    USA Vein, by and through Dr. Katsnelson, contracted with CMS to participate in the Medicare Program to accept assignment of the Medicare Part B payment for all services which the participant is eligible to accept assignment under the Medicare law and regulations.

33.    Under the terms of the Medicare Provider Agreement, USA Vein, by and through Dr. Katsnelson, agreed to comply with the federal and state laws and regulations governing Medicare.

34.    During the relevant period Defendants submitted claims for payment under CPT Codes 36478 and 36479 to Medicare using CMS Form 1500.

35.    During the relevant period Defendants submitted claims for payment under CPT Codes 36478 and 36479 to Medicaid of New York, Medicaid of California (Medi-Cal), Medicaid of Illinois and Medicaid of Massachusetts using CMS Form 1500.

36.    With each claim for reimbursement to Medicare and Medicaid using the CMS Form 1500, Defendants certified that "the services shown on this form were medically indicated and necessary for the health of the patient and were personally furnished by me or were furnished incident to my professional service by my employee under my immediate personal supervision, except as otherwise expressly permitted by Medicare or CHAMPUS regulations." **See Exh. H, , attached hereto.**

37.    With each claim submitted for reimbursement to Medicare using the CMS Form 1500, Defendants further acknowledge that "Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties," and further "may upon conviction be subject to fine and imprisonment under applicable Federal laws. **See Exh. H, attached hereto.**

38. USA Vein, by and through Dr. Katsnelson, was aware of, knew or should have known, or acted in reckless disregard of, the conditions of repayment under the Medicare and Medicaid Programs.

39. From at least 2009 to the present USA Vein Clinics, by and through Dr. Katsnelson, submitted thousands of claims for reimbursement totaling millions of dollars to CMS for endovenous laser therapy using CPT Codes 36478 and 36479.

## DEFENDANTS' FRAUD SCHEME

40. At all relevant times herein, USA Vein, by and through Dr. Katsnelson, operated several medical clinics throughout the country, providing EVLT, compression therapy, sclerotherapy and preventative therapies to patients suffering from venous insufficiency.

41. USA Vein advertises on its website that "costs are currently covered by Medicare and most insurance providers up to 100%," and boasts several testimonials of individuals whose procedures were completely covered by Medicare. **See Exh. F, attached hereto.** USA Vein also advertises over Russian Radio 1030 AM in Chicago, in Russian newspapers in Chicago, on Russian and Armenian internet periodicals, in Armenian newspapers in California and on Armenian Radio in California.

42. At all relevant times herein, USA Vein had no less than 30 employees, at least half of whom directly provided, or assisted in directly providing, the various treatments and procedures to patients.

43. USA Vein generated a portion of its revenue through billing patients for services not provided, inadequately provided or not medically necessary, many of whom had their services paid for by Medicare or Medicaid. At any given time USA Vein had approximately 14,000 patients who were Medicare or Medicaid beneficiaries.

44.     From at least 2009 and continuing through the present, USA Vein, by and through Dr. Katsnelson, employed a variety of fraudulent billing and medical practice schemes which were intended to defraud the government.

47.     USA Vein uses laser fibers manufactured by Total Vein Systems to perform the EVLT procedure, as set forth in paragraphs 28 - 31, *supra*. The fibers are intended for either one-time or five-time use. USA Vein relies on the one-time use fibers to perform the EVLT procedure.

48.     In May 2011, Mr. Zverev other employees of USA Vein discussed the improper medical and billing practices employed Defendants to defraud the government. Alex Margovsky, employed by USA Vein as a business analyst, Iryna Sypita, employed as a medical assistant and technician, and Dr. Bryan Murray, employed as a physician, confirmed to Mr. Zverev that Dr. Katsnelson was knowingly and intentionally sterilizing and reusing medical instruments necessary to perform the EVLT procedure, despite the fact that the instruments used are being manufactured for one-time use only. Dr. Katsnelson reused the instruments, but billed Medicare and Medicaid as if the procedure were properly conducted using new instruments.

A.     **Claims for Services Never Rendered**

49.     In August 2011, Mr. Zverev was sent an e-mail by Cathy Mata, USA Vein's billing manager. The e-mail was also sent to Dr. Katsnelson, Jekaterina Rapaport (USA Vein's insurance manager for Illinois) and Stella Gazaryan (USA Vein's office manager for California), discussing Dr. Katsnelson's billing for procedures performed. The email stated to the effect that "we noticed that Dr. Katsnelson is billing in Boston and Chicago on the same date. We should be more careful."

50.     After receiving the aforesaid e-mail, Mr. Zverev continued to investigate the billing practices of USA Vein. As part of his investigation Mr. Zverev reviewed several different spreadsheets which detailed patient visits and spreadsheets detailing billing of services provided to

patients who were covered by private and public insurance providers, including Medicare and Medicaid. **See Disclosure Statement, Relator Docs 2, 4, 19a and b.**

51.     Mr. Zverev reviewed USA Vein patient data spreadsheets, which documented Dr. Katsnelson as performing eight (8) EVLT procedures on seven (7) different patients in Boston and performing 27 EVLT procedures on 14 different patients in Chicago on October 12, 2009 - the same day.  At least six of the patients billed in Chicago were insured through Medicare.  Insurance data was not provided for the Boston patients.

52.     Mr. Zverev also reviewed USA Vein billing spreadsheets, which  documented Dr. Katsnelson as performing EVLT procedures on at least (8) different patients in Boston and at least five (5) different patients in Chicago on March 22, 2010 - the same day.  At least six of patients billed were insured through Medicare of Medicaid. **See Disclosure Statement, Relator Docs 19a and b.**

53.     Mr. Zverev reviewed another billing spreadsheet, which documented Dr. Katsnelson as performing EVLT procedures on at least 14 different patients in Boston, seven (7) different patients in Chicago on March 23, 2010.  At least 10 patients billed were insured through Medicare of Medicaid. **See Disclosure Statement, Relator Docs 19a and b.**

54.     Based on his review of Defendants' spreadsheets Mr. Zverev also determined that Dr. Katsnelson had billed Medicare and Medicaid for an impossibly high number of procedures conducted in a single day.  In one instance, Dr. Katsnelson is documented performing 19 EVLT procedures ( a minimum of 19 hours) on November 8, 2010.  At least four of the patients were Medicare or Medicaid beneficiaries.  In another Dr. Katsnelson is documented as performing 22 EVLT procedures ( a minimum of 22 hours) on December 17, 2010.  At least two of the patients were Medicare or Medicaid beneficiaries. **See Disclosure Statement, Relator Docs 19a and b.**

55. Comparing the billing and patient data spreadsheets Mr. Zverev determined that Dr. Katsnelson was billing for more procedures than he actually performed, or in other words, for services never rendered. For example, on March 8, 2011, the patient data spreadsheet indicates that Dr. Katsnelson performed 18 procedures, while the billing spreadsheet indicates that he billed insurance providers for 43 procedures. Many of the patients were Medicare and/or Medicaid beneficiaries. **See Disclosure Statement, Relator Docs 19a and b.**

56. Between March 2012 to June 2012, Dr. Melkonyan stated to Mr. Zverev that he had been asked by Dr. Katsnelson to sign off on several altered and backdated patient bills, which reflected charges for services which Dr. Melkonyan had never performed. Dr. Melkonyan told Relator that he resigned under severe durress on May 14, 2012.

57. Based on the above conversations with Dr. Melkonyan, and his investigation, Mr. Zverev believes that other physicians signed-off on altered and/or backdated records at Defendants' request.

58. Defendants knowingly and intentionally defrauded Medicare and Medicaid by falsifying records and submitting claims for reimbursement for services that were never rendered.

**B. Claims for Services Inadequately Rendered**

59. USA Vein clinics use single-use laser fibers manufactured and marketed by Total Vein System when performing the EVLT procedures. In particular, USA Vein uses the 400 and 600 micron core single use optical fibers. The instructions state "the product is a single use product not intended for reprocessing or reuse." **See Exh. J, attached hereto.**

60. The 400 and 600 micron core single use fiber optics are the substantial equivalent of the FDA approved BARD ENDOBEAM Holmium Laser Fiber, which is also a single-use laser fiber utilized by physicians in performing ablation therapy. FDA-mandated warnings for the BARD

ENDOBEAM laser fiber state "[f]or single use fiber, do not sterilize any portion of the device. Reuse and/or repackaging may create a risk of patient or user infection, compromise the structural integrity and/or essential material and design characteristics of the device, which may lead to device failure, and/or lead to injury, illness or death." **See Exh. K, attached hereto**.

61.     The 400 and 600 micron core single optics are also the substantial equivalent of the FDA approved DuoTome SideLite fiber, which is also a single-use fiber utilized by physicians in performing ablation therapy. FDA-mandated warnings for the DuoTome SideLite fiber state as the post-operative instructions "[t]he DuoTome SideLite fiber is a single-use device. **Do not** reuse or resterilize the fiber." **See Exh. L, attached hereto**.

62.     Dr. Katsnelson and other USA Vein physicians knew or should have known that sterilization and/or reuse of the fibers reduced the effectiveness of the instrument and presented a substantial risk to the patients upon whom the instrument was being used.

63.     Dr. Katsnelson and other USA Vein physicians knew or should have known that because sterilization and/or reuse of the fibers reduced the effectiveness of the instrument, more procedures than necessary would be required to achieve the same medical result in treating infected veins.

64.     Dr. Melkonyan and Dr. Murray told Mr. Zverev in 2011, that Dr. Katsnelson was using, and ordering other USA Vein physicians to use, one-time use fibers multiple times. Mr. Zverev was told that these fibers were sterilized by using extreme heat and a sterilization solution and often used more than a dozen times before being disposed.

65.     Mr. Zverev's office was located in the same building as the clinic and on several occasions he walked through the clinic. On at least 12 occasions, Mr. Zverev saw used one-time use fibers soaking in solution.

66.     On at least 12 occasions, Mr. Zverev saw previously used one-time use fibers, which had already been used, placed in a surgical bin to be used in a future procedure

67.     During the summer of 2011, Zverev had an in-person conversation with Ms. Sypita, a medical technician directly involved in performing the EVLT procedure in Illinois, regarding the reuse of one-time use fibers. Ms. Sypita told Zverev that Dr. Katsnelson, as a matter of practice, repeatedly ordered her and other technicians to sterilize the one-time use fibers and reuse them, and they did so.

68.     Mr. Zverev also discussed on several occasions with Dr. Sam Ibrahimi, a physician employed to perform EVLT procedures in California, regarding improper medical and billing practices at USA Vein. Dr. Ibrahimi told Mr. Zverev in 2011 that USA Vein physicians, including Dr. Ibrahami, were ordered by Dr. Katsnelson to use the one-time use fibers on up to 15 different veins on the same leg at the same time.

69.     Mr. Zverev was told by Dr. Ibrahimi that he had witnessed Dr. Katsnelson and other physicians re-sterilize the one-time use fibers and reuse them.

70.     Mr. Zverev was told by Dr. Ibrahimi that he had witnessed that over the course of several sterilizations of the one-time use fibers, the fibers became less effective, requiring additional procedures to be performed in following sessions, that would not have otherwise been necessary.

71.     Medicare reimbursement for performing the EVLT procedure includes reimbursement for the single-use laser fiber. **See Exhs. M and N, attached hereto**.

72.     By sterilizing and re-using the single-use fibers USA Vein Defendants were able to obtain and/or inflate payments from the Government, which but for the false statements, would not have paid.

73.     USA Vein, by and through Dr. Katsnelson, knowingly and intentionally submitted claims for reimbursement to Medicare and/or Medicaid for procedures performed using the new

instruments when in fact they were reusing instruments. This fraudulent maximization of federal reimbursement resulted in higher income and other payments to each Defendant and in failed procedures requiring follow-up EVLT treatments that would not have been necessary had proper medical procedure been followed by Defendants.

74.     Accordingly, all reimbursement claims submitted to Medicare and/or Medicaid for procedures performed using sterilized and/or re-used laser fibers were improper and fraudulent.

### C.     Claims for Medically Unnecessary Services

75.     Providers may seek payment from Medicare for services rendered, but may only be reimbursed by Medicare or Medicaid for providing health care services that are certified as being "reasonable and necessary." 42 U.S.C. § 1395y(a)(1).

76.     Medical necessity is certified by the physician on the CMS Form 1500 when seeking reimbursement. Physicians indicate medical necessity by documenting the diagnosis made by the physician and the corresponding ICD-9-CM code. ICD-9 is an acronym standing for the Internal Classification of Disease, 9th Edition, the coding system currently recognized by CMS for the purpose of reimbursements.

77.     CMS currently recognizes the following ICD-9 codes, and corresponding diagnosis, as making the EVLT procedure medically necessary:

>       454.1: Varicose veins, inflamed or infected
>       454.1: Varicose veins, stasis dermatitis
>       454.1: Varicose veins, lower, ulcer
>       454.8: Varicose veins with pain, swelling
>       454.8: Varicose veins with other complications NEC
>       454.2: Varicose veins with ulcer - inflamed or infected
>       454.0 : Varicose ulcer (lower extremity, any part)

78.     Mr. Zverev compared Defendants' patient billing and data records and determined that patients treated in Illinois, where Dr. Katsnelson is based, were being recommended as necessitating EVLT at a much higher rate than in any other location.

79.     Mr. Zverev also reviewed Defendants' data spreadsheets, which indicated that USA Vein technicians in Illinois recommended "positive diagnoses," indicating a need for surgery at a significantly higher rate than USA Vein technicians in any other state, sometimes as high as a rate of 84 positive diagnoses to one (1) negative diagnosis.

80.     Drs. Murray, Malkonyan and Ibrahimi told Mr. Zverev in 2011 that USA Vein physicians, as ordered by Dr. Katsnelson, performed EVLT procedures on the same vein multiple times within a period of less than two months without a determination of medical necessity.

81.     Drs. Murray, Malkonyan and Ibrahimi told Mr. Zverev in 2011 that USA Vein physicians, as ordered by Dr. Katsnelson, performed the EVLT procedure on secondary veins when such a procedure was purely cosmetic and not medically necessary.

82.     Drs. Murray, Malkonyan and Ibrahimi told Mr. Zverev in 2011 that USA Vein physicians, as ordered by Dr. Katsnelson, indicated ICD-9 codes on Medicare and Medicaid submissions for reimbursement consistent with a finding of medical necessity when such a diagnosis had never been made and was not consistent with the health status of the patient.

83.     Drs. Murray, Malkonyan and Ibrahimi told Mr. Zverev that Dr. Katsnelson and other USA Vein physicians, by order from Dr. Katsnelson, recommend to patients the need for EVLT procedures when, in fact, the patients did not meet any of the accepted ICD-9 indications for medical necessity.

84.     The Defendants knowingly and intentionally repeatedly defrauded Medicare and/or Medicaid by falsifying records and submitting claims for reimbursement for medically unnecessary services.

85.     Accordingly, reimbursement claims submitted to Medicare and/or Medicaid were improper and fraudulent.

### D.     Solicitation of Patients

86.     One of the tasks assigned Mr. Zverev by Dr. Katsnelson during his tenure at USA Vein was to create a computer program designed to track the amount of time elapsed since a patient's most recent visit. He was then required to send a notification to USA Vein's call center to contact the individual after a certain period of time had elapsed to make appointments for additional EVLT procedures to be performed.

87.     The call center is located in Northbrook, Illinois, and is at all times staffed by six employees and two physicians. The purpose of the call center is to respond to inquiries and questions from individuals and insurance providers who call in. They were required by Dr. Katsnelson to solicit appointments from prior patients and recommend addition EVLT procedures, regardless of medical necessity.

88.     Employees at the USA Vein call center were routinely told by Dr. Katsnelson to ignore whether the EVLT procedures were medically necessary when attempting to solicit patients for additional appointments and procedures.

89.     In addition to soliciting additional procedures from former patients through the USA Vein call center, irrespective of truth or medical necessity, all physicians were routinely ordered by Dr. Katsnelson to recommend during follow-up visits that patients' conditions had not improved and required additional EVLT procedures, resulting in additional surgeries when none were required.

90.     Each additional EVLT procedure would be billed to Medicare and Medicaid as if medically necessary despite no determination of medical necessity actually being made by the physician.

91.     Defendants knowingly and intentionally repeatedly defrauded Medicare and/or Medicaid by falsifying records and submitting claims for reimbursement for procedures unlawfully solicited and recommended without a determination of medical necessity.

### E.     Termination of Relator

92.     On or about October 2011 Mr. Zverev became aware, through statements and actions of Dr. Katsnelson, that Dr. Katsnelson knew he was investigating Defendants' billing and medical practices.

93.     On or about October 22, 2011 Dr. Katsnelson called Mr. Zverev at home and told that he would be terminated. Mr. Zverev asked Dr. Katsnelson why he was being terminated and Dr. Katsnelson responded that Mr. Zverev had taken home a laptop computer belonging to USA Vein without permission.

94.     Mr. Zverev's termination came while he was still investigating Defendants' fraudulent medical and billing procedures by searching spreadsheets and databases and speaking with Defendants' employees.

95.     Defendants' had the technological capability to track Mr. Zverev's electronic searches of USA Vein Clinic databases and spreadsheets while he was conducting his investigation in to Defendants' fraudulent practices.

Defendants employed, and had access to, all of the individuals Mr. Zverev spoke with during his investigation of Defendants' fraudulent practices.

96.     As an information technology data analyst for USA Vein Zverev had been given unfettered access to a company laptop computer during his entire tenure with the Company, including home use.

97.     Mr. Zverev took a USA Vein laptop computer home nearly every day during his tenure at USA Vein, and was never told that he needed to request permission to do so, nor did any company policy require him to do so.

98.     Dr. Katsnelson was aware that Mr. Zverev routinely took a USA Vein laptop home for work purposes and never required Mr. Zverev to seek permission on each occasion prior to October 2011.

99.     On or about October 22, 2011, Dr. Katsnelson told Zverev that the only way he could keep his job was if he wrote a letter to Dr. Katsnelson that would make Dr. Katsnelson cry.

## COUNT I
## FALSE CLAIMS ACT 31 U.S.C. §3729(a)(1)(A)

100.    Mr. Zverev repeats and realleges each and every allegation contained in paragraphs 1 through 99 as if fully set forth herein.

101.    This is a claim for treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729-32, as amended.

102.    Prior to May 20, 2009, 31 U.S.C. § 3729(a) provided, in relevant part, liability for any person who -

(1)     knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

103.    Section 1 further provides that in the event of a violation, such a person is "liable to the Unites States for a civil penalty of not less than $5,500 and not more than $11,000, plus 3 times the amount of damages which the United States sustains because of the act of that person.  A person violating this subsection (a) shall also be liable to the State for the costs of a civil action brought to recover any such penalty or damages."

104.    On May 20, 2009, 31 U.S.C. § 3729(a) was amended to provide, in relevant part, liability for:

(1)     any person who -

(A)     knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval

105. USA Vein knowingly presented, or caused to be presented, directly or indirectly, false and fraudulent claims for payment or approval to the United States, including claims for procedures that were never performed, claims that were inadequately performed and claims for payment of services that were not medically necessary.

106. Dr. Katsnelson knowingly caused to be presented, directly or indirectly, false and fraudulent claims for payment or approval to the United States, including claims for procedures that were never performed, claims that were inadequately performed and claims for payment of services that were not medically necessary.

107. Defendants knew that these claims for payment were false or fraudulent, or were deliberately ignorant of the truth or falsity of said claims, or acted in reckless disregard of whether said claims were true or false.

108. By virtue of the false or fraudulent claims presented or caused to be presented by the Defendants, the United States has suffered damages.

109. Defendants are jointly and severally liable to the United States for treble damages under the False Claims Act, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each false claim presented or caused to be presented by Defendants.

**WHEREFORE**, Mr. Zverev respectfully requests that this Court enter judgment against the Defendants as follows:

1. Defendants cease and desist from violating the False Claims Act, 31 U.S.C. § 3729, et seq.;

2. That the United Stated be awarded damages in the amount of three times the damages sustained by the United States because of the false claims and fraud alleged in this Complaint, as the Federal False Claims Act, 31 U.S.C. § 3729 et seq. provides;

3. That civil penalties of $5,500 to $11,000 be imposed for each and every false claim that the Defendants caused to be presented to the United States;

4.  Mr. Zverev be awarded the maximum relator's share allowed pursuant to the False Claims Act, 31 U.S.C. § 3730(d);

5.  Mr. Zverev be awarded all costs of this action, including attorneys' fees, costs, and expenses pursuant to 31 U.S.C. § 3730(d);

6.  Defendants be enjoined from concealing, removing, encumbering, or disposing of assets which may be required to pay the civil monetary penalties imposed by the Court; and

7.  That this Court award the United States and Mr. Zverev such other and further relief as it deems just and proper.

## COUNT II
### FALSE CLAIMS ACT 31 U.S.C. §3729(a)(1)(B)

110. Mr. Zverev repeats and realleges each and every allegation contained in paragraphs 1 - 109 as if fully set forth herein.

111. This is a claim for treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729-32, as amended.

112. Prior to May 20, 2009, 31 U.S.C. § 3729(a) provided, in relevant part, liability for any person who -

(2)  knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

113. Section 2 further provides that in the event of a violation, such a person is "liable to the Unites States for a civil penalty of not less than $5,500 and not more than $11,000, plus 3 times the amount of damages which the United States sustains because of the act of that person. A person violating this subsection (a) shall also be liable to the State for the costs of a civil action brought to recover any such penalty or damages."

114. On May 20, 2009, 31 U.S.C. § 3729(a) was amended to provide, in relevant part, liability for:

(1)     any person who -

(B)     knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim.

115.    At all times relevant herein, USA Vein knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to the United States and false records or statements to get false claims paid. Such false material records and statements include, but are not limited to, the false entries in the CMS Form 1500 submitted to CMS for reimbursement of EVLT procedures from Medicare.

116.    At all times relevant herein, Dr. Katsnelson knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims to the United States and false records or statements to get false claims paid. Such false material records and statements include, but are not limited to, the false entries in the CMS Form 1500 submitted to CMS for reimbursement of EVLT procedures from the Medicare Trust Fund.

117.    By virtue of the false or fraudulent records and statements made, used, or caused to be made or used by the Defendants, the United States has suffered damages.

118.    Defendants are jointly and severally liable to the United States for treble damages under the False Claims Act, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each false claim presented or caused to be presented by Defendants.

**WHEREFORE**, Mr. Zverev respectfully requests that this Court enter judgment against the Defendants as follows:

1.      Defendants cease and desist from violating the False Claims Act, 31 U.S.C. § 3729, et seq.;

2.      That the United Stated be awarded damages in the amount of three times the damages sustained by the United States because of the false claims and fraud alleged in this Complaint, as the Federal False Claims Act, 31 U.S.C. § 3729 et seq. provides;

3.     That civil penalties of $5,500 to $11,000 be imposed for each and every false claim that the Defendants caused to be presented to the United States;

4.     Mr. Zverev be awarded the maximum relator's share allowed pursuant to the False Claims Act, 31 U.S.C. § 3730(d);

5.     Mr. Zverev be awarded all costs of this action, including attorneys' fees, costs, and expenses pursuant to 31 U.S.C. § 3730(d);

6.     Defendants be enjoined from concealing, removing, encumbering, or disposing of assets which may be required to pay the civil monetary penalties imposed by the Court;

7.     That this Court award the United States and Mr. Zverev such other and further relief as it deems just and proper.

## COUNT III
## FALSE CLAIMS ACT 31 U.S.C. § 3729(a)(1)(c)

119.     Mr. Zverev repeats and realleges each and every allegation contained in the paragraphs 1 - 118 as if fully set forth herein.

120.     Prior to May 20, 2009, 31 U.S.C. § 3729(a) provided, in relevant part, liability for any person who -

(3)     conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

121.     Section 3 further provides that in the event of a violation, such a person is "liable to the Unites States for a civil penalty of not less than $5,500 and not more than $11,000, plus 3 times the amount of damages which the United States sustains because of the act of that person. A person violating this subsection (a) shall also be liable to the State for the costs of a civil action brought to recover any such penalty or damages."

122.     On May 20, 2009, 31 U.S.C. § 3729(a) was amended to provide, in relevant part, liability for:

(1)     any person who -

       (c)     conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G).

123.    At all times relevant herein, Defendants, and each of them, knowingly conspired to present, directly or indirectly, false and fraudulent claims for payment or approval to the United States, including claims for procedures that were never performed, claims that were inadequately performed and claims for payment of services that were not medically necessary

124.    At all times relevant herein, Defendants, and each of them, knowingly conspired to make, used, or cause to be make or use, false records or statements material to false or fraudulent claims to the United States and false records or statements to get false claims paid. Such false material records and statements include, but are not limited to, the false entries in the CMS Form 1500 submitted to CMS for reimbursement of EVLT procedures from Medicare.

125.    By virtue of Defendants' conspiracy to present or cause to be presented false or fraudulent claims to the United States, as well as Defendants' conspiracy to make, use, or cause to be made or used false or fraudulent records and statements, the United States has suffered damages.

126.    Defendants are jointly and severally liable to the United States for treble damages under the False Claims Act, in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each false claim presented or caused to be presented by Defendants.

**WHEREFORE**, Mr. Zverev respectfully requests that this Court enter judgment against the Defendants as follows:

1.    Defendants cease and desist from violating the False Claims Act, 31 U.S.C. § 3729, et seq.;

2.    That the United Stated be awarded damages in the amount of three times the damages sustained by the United States because of the false claims and fraud alleged in this Complaint, as the Federal False Claims Act, 31 U.S.C. § 3729 et seq. provides;

3.     That civil penalties of $5,500 to $11,000 be imposed for each and every false claim that the Defendants caused to be presented to the United States;

4.     Mr. Zverev be awarded the maximum relator's share allowed pursuant to the False Claims Act, 31 U.S.C. § 3730(d);

5.     Mr. Zverev be awarded all costs of this action, including attorneys' fees, costs, and expenses pursuant to 31 U.S.C. § 3730(d);

6.     Defendants be enjoined from concealing, removing, encumbering, or disposing of assets which may be required to pay the civil monetary penalties imposed by the Court;

7.     That this Court award the United States and Mr. Zverev such other and further relief as it deems just and proper.

## COUNT IV
### False Claims Act 31 U.S.C. §3730(h)

127.    Mr. Zverev repeats and realleges each and every allegation contained in paragraphs 1 through 126 above as if fully set forth herein.

128.    Mr. Zverev took lawful actions in furtherance of a False Claims Act action, including investigation for, initiation of, testimony for, or assistance in an action filed under this section and, as such, engaged in protected activity under the False Claims Act.

129.    As a result of investigating Defendants' false and fraudulent conduct in an attempt to bring it to light, Mr. Zverev was subjected retaliation and termination.

130.    Such conduct was in violation of the False Claims Act, 31 U.S.C. § 3730(h).

131.    Through Defendants' actions in violation of the False Claims Act, 31 U.S.C. § 3730(h), Mr. Zverev has suffered damages including, but not limited to, loss of his job and income, loss of career opportunities, and humiliation.

**WHEREFORE,** Mr. Zverev respectfully requests that this Court enter judgment against the Defendants as follows:

1.  Mr. Zverev be awarded all litigation costs, expert fees, and reasonable attorneys' fees incurred as provided pursuant to 31 U.S.C. § 3730(h) and other applicable law;

2.  Mr. Zverev be awarded the maximum damages allowed pursuant to 31 U.S.C. § 3730(h), including such relief to make him whole for the damages and financial losses suffered, including, but not limited to, two times the amount of back pay, pre- and post-judgment interest, punitive and compensatory damages, and all litigation costs and reasonable attorneys' fees and costs;

3.  Defendants be enjoined from concealing, removing, encumbering, or disposing of assets which may be required to pay the civil monetary penalties imposed by the Court;

4.  That this Court award the United States and Mr. Zverev such other and further relief as it deems just and proper.

## COUNT V
### CALIFORNIA FALSE CLAIMS ACT, Cal. Gov't Code § 12651*et seq.*

132.    Mr. Zverev re-alleges and incorporates by reference the allegations contained in paragraphs 1 - 131 of this Complaint.

133.    This is a qui tam action brought by Relator on behalf of the State of California to recover treble damages and civil penalties under the California False Claims Act, Cal. Gov't. Code § 12650 et seq.

134.    Cal. Gov't Code § 12651(a) provides liability for any person who

(1)   knowingly presents, or causes to be presented, to an officer or employee of the state or of any political division thereof; a false claim for payment or approval;

(2)   knowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by the state or by any political subdivision;

(3)   conspires to defraud the state or any political subdivision by getting a false claim allowed or paid by the state or by any political subdivision;

(4)   is a beneficiary of an inadvertent submission of a false claim to the state or a political subdivision, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery of the false claim.

135. Defendants violated Cal. Gov't Code § 12651(a) and knowingly caused false claims to be made, used and presented to the State of California by its deliberate and systematic violation of federal and state laws and by virtue of the fact that none of the claims submitted in connection with its conduct were eligible for reimbursement by the government funded healthcare programs.

136. The State of California, by and through the California Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

137. Compliance with applicable Medicare, Medi-Cal and the various other federal and state laws cited herein was an implied and, upon information and belief, also an express condition of payment of claims submitted to the State of California in connection with Defendants' conduct.

138. Had the State of California known that claims had been submitted for reimbursement of procedures that had never been performed, were performed inadequately or unnecessarily, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

139. As a result of Defendants' violations of Cal. Gov't Code § 12651(a), the State of California has been damaged in an amount far in excess of millions of dollars exclusive of interest.

140. Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Cal. Gov't Code § 12652(c) on behalf of herself and the State of California.

141. Relator requests that this Court accept pendant jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and merely asserts separate damages to the State of California in the operation of its Medicaid program.

**WHEREFORE**, Relator respectfully requests that this Court award the following damages to the following parties and against Defendants:

To the State of California:

(1) Three times the amount of actual damages which the State of California has sustained as a result of Defendants' conduct;

(2) A civil penalty of up to $10,000 for each false claim which Defendants presented or caused to be presented to the State of California;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

To Relator:

(1) The maximum amount allowed pursuant to Cal. Gov't Code § 12652 and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Relator incurred in connection with this action;

(3) An award of reasonable attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

## COUNT VI
### ILLINOIS FALSE CLAIMS ACT, 740 ILCS175/1 et al.

142. Mr. Zverev re-alleges and incorporates by reference the allegations contained in paragraphs 1 -141 of this Complaint.

143. This is a qui tam action brought by Relator on behalf of the State of Illinois to recover treble damages and civil penalties under the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175 et seq.

144.    740 ILCS 175/3(a) provides liability for any person who:

    (1)    knowingly presents, or causes to be presented, to an officer or employee of the State of a member of the Guard a false or fraudulent claim for payment or approval;

    (2)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;

    (3)    conspires to defraud the State by getting a false or fraudulent claim allowed or paid.

145.    Defendants violated 740 ILCS 175/3(a) and knowingly caused false claims to be made, used and presented to the State of Illinois by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that none of the claims submitted in connection with its conduct were eligible for reimbursement by the government-funded healthcare programs.

146.    The State of Illinois, by and through the Illinois Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by health-care providers and third party payers in connection therewith.

147.    Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied and, upon information and belief, also an express condition of payment of claims submitted to the State of Illinois in connection with Defendants' conduct.

148.    Had the State of Illinois known that claims had been submitted for reimbursement of procedures that had never been performed, were performed inadequately or unnecessarily, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

149.    As a result of Defendants' violations of 740 ILCS 175/3(a), the State of Illinois has been damaged in an amount far in excess of millions of dollars exclusive of interest.

150. Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to 740 ILCS 175/3(b) on behalf of himself and the State of Illinois.

151. Relator requests that this Court accept pendant jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and merely asserts separate damages to the State of Illinois in the operation of its Medicaid program.

**WHEREFORE**, Relator respectfully requests that this Court award the following damages to the following parties and against Defendants:

To the State of Illinois:

(1) Three times the amount of actual damages which the State of Illinois has sustained as a result of Defendants' conduct;

(2) A civil penalty of not less than $5,500 and not more than $11,000 for each false claim which Defendants caused to be presented to the State of Illinois;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

To Relator:

(1) The maximum amount allowed pursuant to 740 ILCS 175/4(d) and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Relator incurred in connection with this action;

(3) An award of reasonable attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

## COUNT VII
### Massachusetts False Claims Act, Mass. Ann. Laws cb.12, § S(A)-(0)

152. Relator realleges and incorporates by reference paragraphs 1 through 151 as though fully set forth herein.

153. This is a qui tam action brought by Relator on behalf of the Commonwealth of Massachusetts for treble damages and penalties under Massachusetts False Claims Act, Mass. Gen. Laws Ann. Chap. 12 § 5(A) et seq.

154. Mass. Gen. Laws Ann. Chap. 12 § 5B provides liability for any person who-

    (1)    knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

    (2)    knowingly makes, uses, or causes to be made or used, a false record or statement to obtain payment or approval of a claim by the commonwealth or

    (3)    conspires to defraud the commonwealth or any political subdivision thereof through the allowance or payment of a fraudulent claim;

    (4)    is a beneficiary of an inadvertent submission of a false claim to the common wealth or political subdivision thereof, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the commonwealth or political subdivision within a reasonable time after discovery of the false claim.

155. Defendants violated Mass. Gen. Laws Ann. Chap. 12 § 5B and knowingly caused false claims to be made, used and presented to the Commonwealth of Massachusetts by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that none of the claims submitted in connection with its conduct were eligible for reimbursement by the government-funded healthcare programs.

156. The Commonwealth of Massachusetts, by and through the Massachusetts Medic-aid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

157. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied and, upon information and belief, also an express condition of payment of claims submitted to the Commonwealth of Massachusetts in connection with Defendants' conduct.

158.    Had the Commonwealth of Massachusetts known that claims had been submitted for reimbursement of procedures that had never been performed, were performed inadequately or unnecessarily, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

159.    As a result of Defendants' violations of Mass. Gen. Laws Ann. Chap. 12 § 5B, the Commonwealth of Massachusetts has been damaged in an amount far in excess of millions of dollars exclusive of interest.

160.    Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to Mass. Gen. Laws Ann. Chap. 12 § 5(c)(2) on behalf of themselves and the Commonwealth of Massachusetts.

161.    Relator requests that this Court accept pendant jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and merely asserts separate damages to the State of Massachusetts in the operation of its Medicaid program.

**WHEREFORE**, Relator respectfully requests that this Court award the following damages to the following parties and against Defendants:

To the Commonwealth of Massachusetts:

(1)    Three times the amount of actual damages which the Commonwealth of Massachusetts has sustained as a result of Defendants' conduct;

(2)    A civil penalty of not less than $5,000 and not more than $10,000 for each false claim which Defendants caused to be presented to the Commonwealth of Massachusetts;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To Relator:

(1)    The maximum amount allowed pursuant to Mass. Gen. Laws Ann. Chap. 12, §5F and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses which Relator incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## COUNT VIII
### NEW YORK FALSE CLAIMS ACT, N.Y. State Fin.Law§187 *et seq.*

162.    Mr. Zverev re-alleges and incorporates by reference the allegations contained in paragraphs 1 - 161 of this Complaint.

163.    This is a qui tam action brought by Relator on behalf of the State of New York to recover treble damages and civil penalties under the New York False Claims Act, 2007 N.Y. Laws 58, Section 39, Article XIII (Mickinney's State Finance Laws §187 et seq.).   The New York False Claims Act provides liability for any person who:

(a)    knowingly presents, or causes to be presented, to any employee, officer or agent of the state or local government, a false or fraudulent claim for payment or approval;

(b)    knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state or local government;

(c)    conspires to defraud the State by getting a false or fraudulent claim allowed or paid.

164.    Defendants violated the New York False Claims Act and knowingly caused false claims to be made, used and presented to the State of New York by its deliberate and systematic violation of federal and state laws, and by virtue of the fact that none of the claims submitted in connection with its conduct were eligible for reimbursement by the government-funded healthcare programs.

165. The State of New York, by and through the New York Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted for reimbursement.

166. Compliance with applicable Medicare, Medicaid and the various other federal and state laws cited herein was an implied and, upon information and belief, also an express condition of payment of claims submitted to the State of New York in connection with Defendants' conduct.

167. Had the State of New York known that claims had been submitted for reimbursement of procedures that had never been performed, were performed inadequately or unnecessarily, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

168. As a result of Defendants' violations of 2007 N.Y. Laws 58, Section 39, Article XIII, the State of New York has been damaged in an amount far in excess of millions of dollars exclusive of interest.

169. Relator is a private citizen with direct and independent knowledge of the allegations of this Complaint, who has brought this action pursuant to 2007 N.Y. Laws 58, Section 39, Article XIII, on behalf of herself and the State of New York.

170. Relator requests that this Court accept pendant jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim, and merely asserts separate damages to the State of New York in the operation of its Medicaid program.

**WHEREFORE**, Relator respectfully requests that this Court award the following damages to the following parties and against Defendants:

To the State of New York:

(1)   Three times the amount of actual damages which the State of New York has sustained as a result of Defendants' conduct;

(2)   A civil penalty of not less than $6,000 and not more than $12,000 for each false claim which Defendants caused to be presented to the State of New York;

(3)   Prejudgment interest; and

(4)   All costs incurred in bringing this action.

To Relator:

(1)   The maximum amount allowed pursuant to 2007 N.Y. Laws 58, Section 39, Article XIII (Mickinney's State Finance Laws §190), and/or any other applicable provision of law;

(2)   Reimbursement for reasonable expenses which Relator incurred in connection with this action;

(3)   An award of reasonable attorneys' fees and costs; and

(4)   Such further relief as this Court deems equitable and just.

## COUNT IX
### ILLINOIS WHISTLEBLOWER ACT 740 ILCS 174/1 *et seq.*

171.   Mr. Zverev repeats and realleges each and every allegation contained in paragraphs 1 through 170 above as if fully set forth herein.

172.   Mr. Zverev conducted in good faith an investigation into Defendants' fraudulent medical and billing practices.

173.   As a result of Mr. Zverev's actions, he was subjected to retaliation and termination by the Defendants.

174.   Such conduct was in violation of the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.*

175.   Through Defendants' actions in violation of the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.*, Mr. Zverev has suffered damages including, but not limited to, loss of his job and income, loss of career opportunities, and humiliation.

**WHEREFORE**, Plaintiff respectfully requests that this Court award the following damages to the following parties and against Defendants:

(1)     A declaration that Defendants violated the Illinois Whistleblower Act;

(2)     An award of damages in the amount of Plaintiff's lost pay and future salary, supplemental compensation and benefits;

(3)     An award of attorneys' fees, costs, and expenses pursuant to the Illinois Whistleblower Act, 740 ILCS 174/30; and

(4)     An award for any other and further relief that the Court deems equitable, just and proper

## DEMAND FOR A JURY TRIAL

Mr. Zverev demands a jury trial on all claims alleged herein.

Respectfully submitted,

_Robin Potter_

Attorneys for Plaintiff-Relator

Robin Potter, Esq.
Shankar Ramamurthy, Esq.
ROBIN POTTER & ASSOCIATES, P.C.
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
(312) 861-1800
(312) 861-3009 - fax

Gregory Thomas Condon, Esq.
William J. Leonard, Esq.
WANG, LEONARD & CONDON
33 N. LaSalle Street, Suite 2020,
Chicago, Illinois 60602
(312) 782-1668
(312) 782-1669 - fax

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the Relator's **COMPLAINT**, was filed *in camera* and *under seal* pursuant to the Federal, Illinois, and Chicago False Claims Acts and was served upon the following parties on October 5, 2012 as indicated below.

Honorable Eric H. Holder Jr.
United States Attorney General
U.S. Department of Justice, P.O. Box 261
Ben Franklin Station
Washington, DC 20044
Phone: 202-307-0231
**via FedEx**

Martha Coakley, Esq.
Attorney General
Office of the Attorney General
One Ashburton Place
Boston, MA 02108-1518
**via FedEx**

Lisa Madigan, Esq.
Attorney General
Chicago Main Office
100 West Randolph Street
Chicago, IL 60601
**via Delivery**

Linda A. Wawzenski, Esq.
Assistant U.S. Attorney and Deputy Chief
United States Attorney's Office
219 S. Dearborn Street, 5th Floor
Chicago, IL 60604
**via Delivery**

Eric Schneiderman, Esq.
Attorney General
Office of the Attorney General
Dept. of Law-The Capitol, 2nd Fl.
Albany, NY 12224
**via FedEx**

Brian Finkel, Esq.
California Department of Justice
Bureau of Medi-Cal Fraud and Elder Abuse
1455 Frazee Road, Suite 315
San Diego, CA 92108
**via FedEx**

_Robin Potter_
Robin Potter

Exhibits

A



JESSE WHITE
SECRETARY OF STATE

## LLC FILE DETAIL REPORT

| | | | |
|---|---|---|---|
| Entity Name | USA VEIN CLINICS OF CHICAGO LLC | File Number | 02838583 |
| Status | ACTIVE | On | 08/15/2012 |
| Entity Type | LLC | Type of LLC | Domestic |
| File Date | 07/15/2009 | Jurisdiction | IL |
| Agent Name | ALEXANDER DRAPATSKY | Agent Change Date | 07/15/2009 |
| Agent Street Address | 555 SKOKIE BLVD, SUITE 500 | Principal Office | 4141 DUNDEE RD NORTHBROOK, IL 60062 |
| Agent City | NORTHBROOK | Management Type | MGR _View_ |
| Agent Zip | 60062 | Duration | |
| Annual Report Filing Date | 08/15/2012 | For Year | 2012 |
| Series Name | NOT AUTHORIZED TO ESTABLISH SERIES | | |

Return to the Search Screen

Purchase Certificate of Good Standing

(One Certificate per Transaction)

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

EXHIBIT

A

Zverev Production 000001



*WWW.CYBERDRIVEILLINOIS.COM*

JESSE WHITE
SECRETARY OF STATE

## LLC MANAGERS

| Entity Name | USA VEIN CLINICS OF CHICAGO LLC | File Number | 02838583 |
|---|---|---|---|

| Name | Address |
|---|---|
| KATSNELSON, YAN | 4141 DUNDEE RD, NORTHBROOK, IL - 60062 |

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

Zverev Production 000002

B

Data is updated weekly and is current as of Friday, September 28, 2012. It is not a complete or certified record of the entity.

| | |
|---|---|
| **Entity Name:** | USA VEIN CLINICS, INC. |
| **Entity Number:** | C3183128 |
| **Date Filed:** | 01/08/2009 |
| **Status:** | ACTIVE |
| **Jurisdiction:** | CALIFORNIA |
| **Entity Address:** | 5716 LINDENHURST AVE |
| **Entity City, State, Zip:** | LOS ANGELES CA 90036 |
| **Agent for Service of Process:** | CORPORATE CREATIONS NETWORK INC. |
| **Agent Address:** | 131-A STONEY CIRCLE, SUITE 500 |
| **Agent City, State, Zip:** | SANTA ROSA CA 95401 |

| | |
|---|---|
| **Entity Name:** | CORPORATE CREATIONS NETWORK INC. |
| **Entity Number:** | C2250455 |
| **Date Filed:** | 06/23/2000 |
| **Status:** | ACTIVE |
| **Jurisdiction:** | CALIFORNIA |
| **Entity Address:** | 11380 PROSPERITY FARMS RD #221E |
| **Entity City, State, Zip:** | PALM BEACH GARDENS FL 33410 |
| **Agent for Service of Process:** | CORPORATE CREATIONS CALIFORNIA INC. |
| **Agent Address:** | 131-A STONEY CIRCLE, 500 |
| **Agent City, State, Zip:** | SANTA ROSA CA 95401 |

| | |
|---|---|
| **Entity Name:** | CORPORATE CREATIONS CALIFORNIA INC. |
| **Entity Number:** | C3324702 |
| **Date Filed:** | 09/29/2010 |
| **Status:** | ACTIVE |
| **Jurisdiction:** | CALIFORNIA |
| **Entity Address:** | 11380 PROSPERITY FARMS RD #221E |
| **Entity City, State, Zip:** | PALM BEACH GARDENS FL 33410 |
| **Agent for Service of Process:** | CORPORATE CREATIONS NETWORK INC. |

EXHIBIT

B

Zverev Production 000003

| Agent Address: | 131-A STONEY CIRCLE, SUITE 500 |
| Agent City, State, Zip: | SANTA ROSA CA 95401 |

Zverev Production 000004

C



## JESSE WHITE
### SECRETARY OF STATE

## LLC FILE DETAIL REPORT

| | | | |
|---|---|---|---|
| Entity Name | USA VEIN CLINICS LLC | File Number | 01930761 |
| Status | ACTIVE | On | 08/15/2012 |
| Entity Type | LLC | Type of LLC | Domestic |
| File Date | 08/03/2006 | Jurisdiction | IL |
| Agent Name | ALEXANDER DRAPATSKY | Agent Change Date | 03/07/2011 |
| Agent Street Address | 555 SKOKIE BLVD #500 | Principal Office | 4141 DUNDEE RD NORTHBROOK, IL 60062 |
| Agent City | NORTHBROOK | Management Type | MBR  View |
| Agent Zip | 60062 | Duration | PERPETUAL |
| Annual Report Filing Date | 08/15/2012 | For Year | 2012 |
| Old LLC Name | 08/30/2006 - USA VIEN CLINIC LLC | | |
| Series Name | NOT AUTHORIZED TO ESTABLISH SERIES | | |

Return to the Search Screen

Purchase Certificate of Good Standing

(One Certificate per Transaction)

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

```
EXHIBIT

    C
```

Zverev Production 000005



WWW.**CYBER**DRIVEILLINOIS.COM

JESSE WHITE
SECRETARY OF STATE

## LLC MEMBERS

| Entity Name | USA VEIN CLINICS LLC | File Number | 01930761 |
|---|---|---|---|

| Name | Address |
|---|---|
| KATSNELSON, YAN | 4141 DUNDEE RD, NORTHBROOK, IL - 60062 |

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

Zverev Production 000006

D

7/27/2009 1:45 PM  FROM: 617-227-0178    TO: 1-617-624-3891    PAGE: 002 OF 004

MA SOC    Filing Number: 200972039390    Date: 07/27/2009 1:47 PM

# P  The Commonwealth of Massachusetts
### William Francis Galvin
Secretary of the Commonwealth
One Ashburton Place, Room 1717, Boston, Massachusetts 02108-1512

### Professional Limited Liability Company
### Certificate of Organization
#### (General Laws Chapter 156C, Section 12)

Federal Identification No.: _____

(1) The exact name of the limited liability company:

**USA Vein Clinics of Boston LLC**

(2) The street address of the office in the commonwealth at which its records will be maintained:

**1208B VFW Parkway, Suite 300, West Roxbury, MA 02132**

(3a) The professional service to be rendered:

**MEDICINE**

(3b) The name and address of each member or manager who will render a professional service in the Commonwealth, and attach a certificate of the applicable regulating board that each such member or manager who will render the service in the Commonwealth is duly licensed:

YAN KATSNELSON
1208B VFW Parkway, Suite 300
West Roxbury, MA 02132

USA VEIN CLINICS P.C.
12 STONEHEDGE RD
LINCOLN, MA 01773

(3c) The limited liability company agrees to abide by and be subject to any conditions or limitations established by any applicable regulating board including the provision of liability insurance required by G.L. c.156C § 65.

(4) Latest date of dissolution, if specified: **NONE**

(5) The name and street address, of the resident agent in the commonwealth:

| NAME | ADDRESS |
|---|---|
| YAN KATSNELSON | 1208B VFW Parkway, Suite 300, West Roxbury, MA 02132 |

EXHIBIT

D

Zverev Production 000007

7/27/2009 1:45 PM  FROM: 617-227-0178   TO: 1-617-624-3891   PAGE: 003 OF 004

(6)  The name and business address, if different from office location, of each manager, if any, and if none, so state:

NAME

YAN KATSNELSON

ADDRESS

1208B VFW Parkway, Suite 300, West Roxbury, MA 02132

(7)  The name and business address, if different from office location, of each person in addition to manager(s) authorized to execute documents filed with the Corporations Division, and at least one person shall be named if there are no managers:

NAME

ADDRESS

(8)  The name and business address, if different from office location, of each person authorized to execute, acknowledge, deliver and record any recordable instrument purporting to affect an interest in real property recorded with a registry of deeds or district office of the land court:

NAME

YAN KATSNELSON

ADDRESS

1208B VFW Parkway, Suite 300, West Roxbury, MA 02132

(9)  Additional matters:

Signed by *(by at least one authorized signatory):* _____

Consent of resident agent:

I  YAN KATSNELSON

resident agent of the above limited liability company, consent to my appointment as resident agent pursuant to G.L. c 156C § 12*

*or attach resident agent's consent hereto.

Zverev Production 000008

7/27/2009 1:45 PM FROM: 617-227-0178 TO: 1-617-624-3891 PAGE: 004 OF 004

## The Commonwealth of Massachusetts
### William Francis Galvin
Secretary of the Commonwealth
One Ashburton Place, Boston, Massachusetts 02108-1512

### Certificate by Regulatory Board

In compliance with General Laws, Chapter 156C/108A the, _Board of Registration and Medicine_____ hereby certifies
                                                                                                                                                                             *(name of board)*

that in connection with the formation/registration of: _USA VEIN CLINICS OF BOSTON LLC_____
                                                                                                                                     *(name of company/partnership)*

a professional limited liability company/limited liability  partnership formed to render _Medical_____ services
                                                                                                                                                                   *(type of service)*

the below listed members/partners are duly licensed or admitted to practice the profession listed above.

| Member/Partners | Addresses |
|---|---|
| YAN KATSNELSON | 1208B VFW PARKWAY, SUITE 300 WEST ROXBURY, MA 02132 |

Signed by: _____John B Herman MD_____.
                                         *(chairman/clerk of the regulatory board)*

on this ____16th_____ day of_____July_____, __2009_____.

Delete any inapplicable language.

certificatebyregboard 08/2405

Zverev Production 000009

THE COMMONWEALTH OF MASSACHUSETTS

I hereby certify that, upon examination of this document, duly submitted to me, it appears

that the provisions of the General Laws relative to corporations have been complied with,

and I hereby approve said articles; and the filing fee having been paid, said articles are

deemed to have been filed with me on:
July 27, 2009 1:47 PM

WILLIAM FRANCIS GALVIN

*Secretary of the Commonwealth*

Zverev Production 000010

*E*

MA SOC    Filing Number: 200808296870    Date: 02/04/2008 5:27 PM
02/04/2008  17:19    18472798449    GELTCO                    PAGE  02/07

# PC

## The Commonwealth of Massachusetts
### William Francis Galvin
Secretary of the Commonwealth
One Ashburton Place, Boston, Massachusetts 02108-1512

FORM MUST BE TYPED                                    FORM MUST BE TYPED

## Articles of Organization
### (General Laws Chapter 156A, Section 7; 950 CMR 105.04)

### ARTICLE I
The exact name of the corporation is:

USA Vein Clinics P.C.

### ARTICLE II
The purpose of the corporation is to engage in the following professional activities:

### ARTICLE III
State the total number of shares and par value*, if any, of each class of stock that the corporation is authorized to issue. All corporations must authorize stock. If only one class or series is authorized, it is not necessary to specify any particular designation.

| WITHOUT PAR VALUE | | WITH PAR VALUE | | |
|---|---|---|---|---|
| TYPE | NUMBER OF SHARES | TYPE | NUMBER OF SHARES | PAR VALUE |
| Common | 1000 | | | |
| | | | | |
| | | | | |

    EXHIBIT

       E

*G.L. Chapter 156D eliminates the concept of par value, however a corporation may specify par value in Article III. See G.L. Chapter 156D, Section 6.21, and the comments relative thereto, as applied by G.L. Chapter 156A, Section 7.

P.C.

Zverev Production 000011

**ARTICLE IV**

Prior to the issuance of shares of any class or series, the articles of organization must set forth the preferences, limitations and relative rights of that class or series. The articles may also limit the type or specify the minimum amount of consideration for which shares of any class or series may be issued. Please set forth the preferences, limitations and relative rights of each class or series and, if desired, the required type and minimum amount of consideration to be received.

**ARTICLE V**

The restrictions, if any, imposed by the articles of organization upon the transfer of shares of any class or series of stock are:

**ARTICLE VI**

Other lawful provisions, and if there are no such provisions, this article may be left blank.

*Note: The preceding six (6) articles are considered to be permanent and may be changed only by filing appropriate article of amendment.*

Zverev Production 000012

## ARTICLE VII

The effective date of organization of the corporation is the date and time the articles were received for filing if the articles are not rejected within the time prescribed by law. If a later effective date is desired, specify such date, which may not be later than the 90th day after the articles are received for filing:

## ARTICLE VIII

The information contained in this article is not a permanent part of the articles of organization.

a. The street address of the initial registered office of the corporation in the commonwealth:
   12 Stonehedge Road, Lincoln, MA 01773

b. The name of its initial registered agent at its registered office:
   Yan Katsnelson

c. The names and addresses of the individuals who will serve as the initial directors, shareholders, president, treasurer and secretary of the corporation (an address need not be specified if the business address of the officer or director is the same as the principal office location):

   President: Yan Katsnelson

   Treasurer: Yan Katsnelson

   Secretary: Yan Katsnelson

   Director(s):  Yan Katsnelson

Shareholder(s) (must provide residential address):

   Yan Katsnelson, 12 Stonehedge Road, Lincoln, MA 01773

d. The fiscal year end of the corporation:
   December 31
e. A brief description of the type of business in which the corporation intends to engage:
   Vein treatment
f. The street address of the principal office of the corporation:
   12 Stonehedge Road, Lincoln, MA 01773
g. The street address where the records of the corporation required to be kept in the commonwealth are located is:

12 Stonehedge Road, Lincoln, MA 01773 _____, which is
                        *(number, street, city or town, state, zip code)*

*(check appropriate box)*

☑ its principal office;

☐ an office of its secretary/assistant secretary;

☐ an office of its transfer agent;

☐ its registered office.

**Please insert the required certificate(s) from the appropriate regulatory board(s).**

Signed this 4th _____ day of February _____ , 2008 ____ by the incorporator(s):

Signature: _Yan Katsnelson_____

Name: _Yan Katsnelson_____

Address: _12 Stonehedge Road, Lincoln, MA 01773_____

Zverev Production 000013

# The Commonwealth of Massachusetts

**William Francis Galvin**
Secretary of the Commonwealth
One Ashburton Place, Boston, Massachusetts 02108-1512

FORM MUST BE TYPED        **Certificate by Regulatory Board**\*\*        FORM MUST BE TYPED
(General Laws, Chapter 112 or 221)

In compliance with General Laws, Chapter 156A, Section 7, the __Board of Registration in Medicine__
(Exact name of board)

hereby certifies that in connection with the incorporation of _USA Vein Clinics P.C._ ,
(Exact name of corporation)

a professional corporation formed to render __vein treatment__ services,
(Type of professional service to be rendered)

the below listed incorporators, officers, directors, and shareholders are duly licensed or admitted to practice the profession listed above.

| **INCORPORATORS** | **RESIDENTIAL ADDRESS** |
|---|---|
| Yan Katsnelson | 12 Stonehedge Road, Lincoln, MA 01773 |

| **OFFICERS** | **RESIDENTIAL ADDRESS** |
|---|---|
| Yan Katsnelson | 12 Stonehedge Road, Lincoln, MA 01773 |

| **DIRECTORS** | **RESIDENTIAL ADDRESS** |
|---|---|
| Yan Katsnelson | 12 Stonehedge Road, Lincoln, MA 01773 |

| **SHAREHOLDERS** | **RESIDENTIAL ADDRESS** |
|---|---|
| Yan Katsnelson | 12 Stonehedge Road, Lincoln, MA 01773 |

SIGNED this **4th** day of **February** , 20 **08** ,

by _____ , \*Chairman / \*Clerk.

*\*Delete the inapplicable word.*
*\*\*Certain regulatory boards may require a fee for the issuance of this certificate.*

Zverev Production 000014

THE COMMONWEALTH OF MASSACHUSETTS

I hereby certify that, upon examination of this document, duly submitted to me, it appears

that the provisions of the General Laws relative to corporations have been complied with,

and I hereby approve said articles; and the filing fee having been paid, said articles are

deemed to have been filed with me on:

February 04, 2008 5:27 PM

WILLIAM FRANCIS GALVIN

*Secretary of the Commonwealth*

241142-1-0

Zverev Production 000015

F

CALL 24/7 **888-76-VEINS**
(888-766-3467)

HOME     OUR LOCATIONS     VEIN PROBLEMS     **TREATMENTS**     WHAT TO EXPECT     INSURANCE COVERAGE     TESTIMONIALS     CONTACT US

SEARCH WEBSITE 🔍

## ENDOVENOUS LASER THERAPY (EVLT)

### EVLT - The Most Advanced Treatment For Varicose And Vein Disease

In the past, varicose veins were treated with a surgical procedure called vein stripping, where the vein was completely removed from the leg. Today, Endovenous Laser Therapy (EVLT) is used to deliver laser energy into the malfunctioning vein to seal it closed. It's precise, painless, and quick.

| 60 YEARS AGO Vein Stripping | TODAY Endovenous Laser Therapy |
|---|---|
| Hospitalization required | Appointment at a clinic |
| General or spinal anesthesia required | Local Anesthesia |
| Surgical cuts and stitches (sutures) | Laser Treatment is minimally invasive |
| Leaves a scar | Little to no scarring |
| Can experience pain | Minimal or no pain |
| Age range limitations | Can help anyone of any age |
| Recovery takes 3 to 6 weeks | Immediately resume your normal daily activities |

In preparation for the EVLT procedure, an ultrasound machine is used to examine and map out the shape and size of the veins in your legs. This venous map allows our ultrasonographers and physicians to accurately locate the unhealthy veins that need to be treated. Our physicians will also provide you with a personalized treatment plan that will include the estimated number of treatments that your leg may require.





During the EVLT procedure, you are awake and your leg is numbed with a local anesthetic. A small puncture is made in the leg near the location of the unhealthy vein. A thin fiber-optic probe is inserted through a needle into the vein using ultrasound guidance.

A highly concentrated beam of light from the laser heats the vein walls which makes them shrink. This causes the unhealthy vein to collapse. The precision of the laser allows the physician to target the vein without affecting the surrounding tissue. Once the vein is sealed closed, it slowly disintegrates while being absorbed by the surrounding soft tissues. The other healthy veins in your leg will then take over the normal blood flow toward the heart.

EXHIBIT

F

Zverev Production 000016



## THE ADVANTAGES OF EVLT

### HIGH SUCCESS & LOW COST
- ☑ Clinical studies have shown up to a 98% success rate1
- ☑ You can immediately resume your normal daily activities
- ☑ Costs are currently covered by Medicare and most insurance providers up to 100%

### CONVENIENT
- ☑ Each procedure usually takes less than 15 minutes
- ☑ No hospitalization required. All procedures are performed at our clinics.
- ☑ Immediate relief from painful symptoms

### LOW RISK
- ☑ Non-surgical & Non-invasive
- ☑ No general anesthesia
- ☑ No large incisions needed
- ☑ Little to no scarring
- ☑ Minimal risk of postoperative infection

### SAFE
- ☑ Approved since 2002 by the FDA ( US Food & Drug Administration)

**What's my next step?**
Ready for the next step? Request an appointment today by filling out the form, or calling our direct line 888-768-3467 to contact any of our office locations.

HOME    OUR LOCATIONS    VEIN PROBLEMS    TREATMENTS    WHAT TO EXPECT    INSURANCE COVERAGE    TESTIMONIALS    CONTACT US

© 2012 USA Vein Clinics - All Rights Reserved.    Privacy Policy | Terms of Use | Sitemap

Zverev Production 000017

G

- <u>USA Vein Clinics</u>

- 

  We'll
  Call You

- 

  Chat

- 

  Send Us
  a Message

- 

- 

- 

- 

- CALL
  24 / 7  888-76-VEINS

- (888-768-3467)

- 

  ○ Select▦  English (US)
  ○ Search Website        🔍

- <u>Home</u>
  ○ <u>About Us</u>
    ○ <u>Our Doctors</u>
      ■ <u>Publications</u>
- <u>Our Locations</u>
  ○ <u>USA Vein Clinics In Chicago</u>
  ○ <u>USA Vein Clinics In Northbrook</u>
  ○ <u>USA Vein Clinics In Elk Grove Village</u>
  ○ <u>USA Vein Clinics In Brooklyn</u>
  ○ <u>USA Vein Clinics In Manhattan</u>
  ○ <u>USA Vein Clinics In Queens</u>
  ○ <u>USA Vein Clinics In Valley Village</u>
  ○ <u>USA Vein Clinics In West Hollywood</u>
  ○ <u>USA Vein Clinics In Boston</u>
- <u>Vein Problems</u>
  ○ <u>Signs & Symptoms</u>
  ○ <u>Do You Share the Same Symptoms?</u>
- <u>Treatments</u>

EXHIBIT

G

Zverev Production 000018

- ◦ EVLT
- ◦ Compression Therapy
- ◦ Sclerotherapy
- ◦ Prevention
- ◦ FAQ
- What to Expect
- Insurance Coverage
- Testimonials
  - ◦ Patient Success Stories
  - ◦ Before & After Vein Treatment Photos
- Contact Us
  - ◦ Request an Appointment
  - ◦ Send Us a Message
  - ◦ Careers
  - ◦ We'll Call You
- USA Vein Clinics Blogspot

# Our Doctors

USA Vein Clinics physicians are highly skilled vascular specialists. Below are the profiles of some of our physicians.

## Yan Katsnelson, M.D.



Dr. Yan Katsnelson is a highly-skilled cardio-vascular surgeon. He completed his training at the Brigham and Women's Hospital, Harvard Medical School, and served as an attending Cardiovascular and Thoracic Surgeon at the University of Chicago.

Dr. Katsnelson's clinical interests include minimally-invasive aortic and mitral valve surgery, complex aortic operations, re-operative coronary and valve surgery, and beating-heart (off-pump) bypass surgery. His research interests are in the fields of mitral valve repair and ventricular assist devices. He performs a wide range of vascular and thoracic operation, including the innovative and minimally invasive Endovenous Laser Therapy to treat varicose veins.

Yan Katsnelson, M.D. is the founder of the Chicago Heart Institute and USA Vein Clinics. He is fluent in English, Russian, and Hebrew. He is also a member of the American College of Phlebology and the Society of Thoracic Surgery.

Dr. Yan Katsnelson is an author and co-author of multiple medical scientific publications. Dr. Yan Katsnelson's publications

Zverev Production 000019