UNITED STATES DISTRICT COURT
FOR NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* CONSTANTINE ZVEREV, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> USA VEIN CLINICS OF CHICAGO, LLC, *et al.*, <br><br> Defendants. | Case No. 1:12-cv-08004 <br><br> Judge John J. Tharp <br><br> Magistrate Judge Susan E. Cox |

**DEFENDANTS' MOTION TO COMPEL WITHHELD COMMUNICATIONS
BETWEEN RELATOR AND THIRD PARTIES CONCERNING DEFENDANTS**

Defendants,[1] by their undersigned counsel, respectfully move the Court for an order compelling Relator to produce responsive communications with third parties, which Defendants recently learned Relator has withheld based on illegitimate invocations of privilege and confidentiality or with no explanation at all. In support of the motion, Defendants state as follows:

**BACKGROUND**

**A. The Present Disputes Arising from Relator's Recent Production of Documents from Blue Cross/Blue Shield**

1. On November 25, 2018, Relator filed a motion requesting a "brief extension" of fact discovery—which per this Court's order ended 4.5 months ago, on July 10, 2018 (*see* Dkt. No. 112)—or alternatively for the Court to deem timely three productions that Relator made after fact discovery closed but intends to use in expert discovery. *See* Dkt. No. 171.

---

[1] Defendants are USA Vein Clinics of Chicago, LLC; USA Vein Clinics, LLC; USA Vein Clinics of Boston, LLC; USA Vein Clinics, PC; USA Medical of New York, LLC; USA Vein Clinics, Inc.; and Dr. Yan Katsnelson.

2.      Relator's motion presents an incomplete and misstated description of the background as to Relator's untimely productions and the parties' discussions on that subject, including specifically the parties' dialogue concerning Relator's illegitimate withholding of responsive communications with third parties, which is foundational to understanding Defendants' objection to Relator's untimely productions—and which is the subject of Defendants' present motion.

3.      Relator's motion does not see fit to acknowledge that the parties' impasse on Relator's untimely productions (*see* Dkt. 171, ¶ 8 (perfunctorily noting Defendants' objection)) was precipitated entirely by an untimely production Relator recently made on November 9, 2018, which Relator's motion does not mention.

4.      On that day, Relator notified Defendants that Relator had "received a supplemental production from Blue Cross/Blue Shield of Illinois."  *See* Nov. 2018 Email Correspondence, Ex. A-1.  Defendants inquired as to how it was that this production was being made at so late a date, and naturally assumed it came about through ongoing discussions between Relator and Blue Cross/Blue Shield after fact discovery ended (*see id.*)—a supposition that has since been confirmed, as discussed *infra*.  Further to that point, Defendants requested that Relator produce communications with Blue Cross/Blue Shield (*see id.*), both because Defendants' production requests sought such communications (*see* Ex. B, Defendants' First RFP, Nos. 4, 5, and 7) and Relator had produced certain of those communications previously (*see, e.g.*, Exs. F and J), and in order that Defendants could understand the relevant history so as to formulate a position.  *See* Nov. 2018 Email Correspondence, Exs. A-1, A-2, A-3.

5.      For the next two weeks, Defendants repeatedly sought to confer on this subject and followed up with Relator for production of responsive communications with Blue Cross/Blue

1

Shield, during which time Relator obfuscated, refused to give a clear answer as to whether or what extent Relator would produce responsive communications, and took inconsistent, and at times demonstrably untrue, positions. *See* Nov. 2018 Email Correspondence, Exs. A-1, A-2, A-3.

6. In particular, on November 14, Relator's counsel sent an email to Defendants in which she stated, in part:

> Our discovery responses made it clear that our communications with the carrier [Blue Cross/Blue Shield] are privileged. . . . We did not pursue any discovery other than our initial subpoena and for expert discovery. . . . [W]e provide you with limited disclosure of our emails with Blue Cross post the 4th BC production in July, 2018. Under separate cover, we will forward my emails between September 10, 2018 and September 20, 2018, along with the attachments, which consisted of documents from BC prior productions, all of which were tendered to you. I believe these are complete. As you can see, there is nothing here regarding documents but a simple request to confirm completeness and if there was a supplementation for missing documents.

*See* November 2018 Email Correspondence, Ex. A-3. This email is misleading and to a large degree responsible for the fact that the parties' present disputes have been elevated to this Court.

7. *First*, almost immediately after sending the email, Relator's counsel revealed that her representations that she only communicated with Blue Cross/Blue Shield so as to "confirm completeness" of the subpoena response were untrue. Relator's counsel forwarded a purportedly "complete" set of post-fact-discovery emails (consisting of three email chains, all from September 2018), in one of which she inquired of Blue Cross/Blue Shield about "the status of pending investigations" and Defendants' current status with Blue Cross/Blue Shield. *See* Relator's Sept. 21, 2018 Email with Blue Cross/Blue Shield, Ex. C. That information has nothing to do with the subpoena, which per this Court's order was confined to the time period 2009-2012. *See* Blue Cross/Blue Shield Subpoena, Ex. D; Dkt. No. 123 (limiting discovery to events from during 2009-2012). Thus, Relator was unarguably communicating with Blue Cross/Blue Shield about matters

2

unrelated to the subpoena, and Relator had not merely followed up with them to "confirm completeness" of the subpoena.

8. *Second*, Relator's discovery responses, never "made it clear" that communications with Blue Cross/Blue Shield were "privileged." Relator's discovery responses (*see* Ex. E) did not even mention Blue Cross/Blue Shield nor claim that communications between Relator and a private, third-party insurance carrier whom Relator would subpoena could somehow be privileged.

9. Rather, Relator's objections stated generally in response to Defendants' RFP No. 4 (for communications "with any federal, state or municipal government entity or agency, private insurance provider, or Centers for Medicare & Medicaid services concerning" Defendants), that Relator "objects to this request to the extent it seeks protected information such as attorney work product, attorney-client communications, and the joint-investigative privilege to which plaintiff does not respond," and specifically only that "Plaintiff does not produce all communications to or from his counsel and CMS, other than what has been produced."

10. Relator served the above-referenced discovery responses on March 21, 2018, at which time he had not yet even subpoenaed Blue Cross/Blue Shield. After subsequently serving that subpoena in April, Relator thereafter produced various responsive communications with Blue Cross/Blue Shield. *See* Communications with Blue Cross/Blue Shield, Ex. F.

11. Notably, on May 3, 2018, when Relator made his first production of documents collected from Blue Cross/Blue Shield, Defendants' counsel specifically asked Relator to forward along with the production "any accompanying correspondence" with Blue Cross as had been requested in Defendants' production requests, in response to which Relator's counsel said she "sent both of the BC emails" and "that's all I received," and did not invoke any supposed privilege

3

nor mention that Relator was in fact withholding communications on that basis. *See* May 2018 Emails, Ex. J.

12. And, Relator has never identified any communications with Blue Cross/Blue Shield on a privilege log. Thus, until Relator's counsel sent the email noted above on November 14—which first asserted a purported privilege over responsive communications with Blue Cross/Blue Shield—Defendants had no way of apprehending that Relator had withheld other responsive communications on that improper basis.

13. The parties spoke via phone on the afternoon of November 14, during which time Relator's counsel gave shifting and confusing statements about her communications with Blue Cross/Blue Shield—at one moment asserting Relator had already produced "everything" while at the next invoking privilege as a basis for not making production—such that Defendants asked that Relator (a) simply state clearly in writing, after the call, whether and to what extent Relator had produced/withheld communications with Blue Cross/Blue Shield, and (b) to the extent communications had been withheld for a purported privilege, appropriately identify those communications on a privilege log. *See* November 2018 Email Correspondence, Ex. A-3.

14. Two days later, on November 16, Relator sent Defendants a letter, Ex. G, which oddly reiterated that Relator only communicated with Blue Cross/Blue Shield to "confirm completeness" of its subpoena response (Ex. G at 2), while again invoking privilege and confusingly stating, "We confirm that my current email search does not reveal any further emails between me and BCBS *after the close of fact discovery, except as noted and previously produced*." (*Id*. at 2) (emphasis added). The letter also stated in a footnote that Relator had withheld one email because it is "confidential." (*Id*. at 2 n.1.) Relator has not clarified why production was limited to only after fact discovery closed—to which Defendants never consented—nor explained what is

4

meant by "except as noted," and specifically whether that "exception" refers to emails withheld for privilege, confidentiality, or some other basis.

15. Lastly, as Defendants analyzed this issue and reviewed Relator's productions of communications with third parties, they came to realize that Relator not only withheld responsive communications with Blue Cross/Blue Shield, but also seems to have omitted portions of emails Relator produced involving communications with the U.S. Department of Health and Human Services so as to produce only parts of those emails. Defendants identified this issue for Relator in an email on November 19. *See* November 2018 Email Correspondence, Ex. A-4.[2]

16. To date, Relator has not produced any additional communications, has not produced a privilege log identifying any purportedly privileged communications with Blue Cross/Blue Shield, and has ignored the issue Defendants identified with respect to the seemingly incomplete emails with the U.S. Department of Health and Human Services.

**B. Relator's Prior Unreasonable Positions and Untimely Productions for Which Relator Never Previously Sought Relief**

17. It was within the context of the parties' discussions described above that Relator requested on November 19 that Defendants waive any objection to the untimeliness of three prior untimely productions that Relator had made of data from Blue Cross/Blue Shield, California, and Massachusetts, respectively. *See* Ex. A-4.

18. Relator's motion gives a distorted description of the history relevant to those productions, not mentioning that Relator was in possession of at least some of the information in question well prior to the fact discovery deadline yet waited until after to produce it, and bizarrely intimating that Defendants are to blame for the untimely productions due to "refusal to confer with

---

[2] Defendants have not included with this filing the seemingly excised emails in question because they contain sensitive, non-public information but could provide the emails in camera or under seal for the Court's review if necessary.

5

the AGs or execute the government's forms required for the release of the government's spreadsheets." Dkt. No. 171 ¶ 2. The reality of the situation is far different.

19. On June 5, 2018—five weeks before fact discovery closed—Relator sent an email to Defendants saying that Relator had "received some claims data from California Medicaid." *See* June 2018 Emails, Ex. H-1.

20. Later that week, on June 10, Relator asked Defendants and Defendants' law firm, Winston & Strawn LLP, to sign, as a condition of receiving the information, an "Agreement Regarding Confidentiality and Disclosure of Information," which among other absurd conditions, would have had Defendants and their counsel agree that any information originating from the State of California could not be used or disclosed for any purpose whatsoever or at all—including in this litigation in a filing with the Court, for example—without the state's written consent. *See* Ex. I-1 ¶ 1. On June 19, 2018, Relator sent a similar agreement with Massachusetts. *See* Ex. I-2.

21. In correspondence and calls among the parties, as reflected, for example, in an email sent later in the day on June 19, Defendants repeatedly made known their position that it was not appropriate for Relator to condition production in this manner, urged Relator to make timely production and, to the extent any third parties had confidentiality concerns, encouraged Relator to suggest those parties invoke as appropriate the HIPAA Qualified Protective Order on file in the case (Dkt. No. 70):

> Defendants have made clear their position on this issue. To the extent Relator has collected information from third parties but refuses to timely produce that information as Relator has done thus far, Defendants object to the use of any such information in this litigation and reserve all rights.

> Relator has no right to condition production of information to Defendants on Defendants' execution of contracts that provide third parties and/or Relator rights and privileges that restrict Defendants' use of the information or that limit Defendants' ability to defend against Relator's claims beyond what is provided by the Federal Rules of Civil Procedure, Local Rules, and applicable orders of the Court. We remind you, and suggest you notify or remind as necessary any third

6

> parties with whom you are dealing, that there is a HIPAA Qualified Protective Order on file in this case that was negotiated by the parties and entered by Judge Tharp specifically to account for sensitive medical information and other information that the parties or third parties might want to protect from public disclosure. Relator and/or third parties may avail themselves of the provisions of that HIPAA Qualified Protective Order as they deem appropriate, subject to the other provisions contained in that order.
>
> Defendants request, again, that Relator immediately produce any information in his possession, custody, or control that he intends to use in this case but has refused to produce thus far.

*See* June 2018 Emails, Ex. H-2.

22. Relator eventually pivoted to requesting that Defendants agree that whatever materials Relator had collected from the third parties would be covered by the HIPAA Qualified Protective Order. *See* June 2018 Emails, Ex. H-3. Defendants responded that they could not agree—site unseen—that whatever information Relator had would be protected from public disclosure, and instead simply acknowledged in an email that the HIPAA Qualified Protective Order permits third parties to designate information "confidential" subject to the terms of the order. *See* June 2018 Emails, Ex. H-4. (It is that email that Relator's motion apparently strangely characterizes as a "confidentiality agreement" with the California and Massachusetts attorneys general that was purportedly "executed" by Defendants. *See* Dkt. 171 ¶ 7. Defendants have executed no such "confidentiality agreement," other than the HIPAA Qualified Protective Order.)

23. Thereafter, Relator eventually made the three untimely productions that are the subject of Relator's motion. As noted above, however, it was only recently, as the parties were discussing Relator's productions or lack thereof from third parties, that Relator suddenly asked Defendant to waive any objection to the untimeliness of the productions. *See* November 2018 Emails, Ex. A-4.

24. Defendants advised Relator via email that they declined to waive any such objection at this point, particularly in light of the unresolved status of the parties' discussions about

7

Relator's production of communications with third parties, while inviting Relator to address the points Defendants had raised. *See* November 2018 Emails, Ex. A-4.

25. On Wednesday, November 21, 2018, Relator's counsel said they needed additional time to respond to those issues "due to the holidays, the press of some other matters, including the expert reports in this case." *See* November 2018 Emails, Ex. A-5.

26. But then, without any further word, Relator filed his motion to extend the discovery deadline—a motion that does not mention any of the context described above that informs Defendants' objection. Dkt. 171.

## ARGUMENT

27. There is no question that Relator's communications with third parties about Defendants, which Relator has evidently withheld, are responsive to Defendants' production requests (*see* Ex. B, Defendants' First RFP, Nos. 4, 5, and 7), and that they are relevant and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Relator does not claim otherwise.

28. The communications go directly toward Defendants' ability to formulate a complete picture of the information Relator has attempted to gather to prove his claims and may prove valuable material for cross-examination of Relator's witnesses, including witnesses from Blue Cross/Blue Shield or the U.S. Department of Health and Human Services whom Relator might call to give testimony prejudicial to Defendants.

29. With regard to the Blue Cross/Blue Shield communications, Relator appears to withhold them exclusively on the basis of a purported attorney-client privilege. *See* November 2018 Email Correspondence, Ex. A-3. But there is no such privilege here.

8

30. The attorney-client privilege protects communications between an attorney and the attorney's client that are made in confidence for the purpose of giving legal advice. *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). The presence of a third party typically waives any privilege that might be claimed. *Id*. at 1462. In limited circumstances, the attorney-client privilege can be extended to otherwise privileged and confidential communications among third parties under the so-called common interest exception to the general rule that the presence of a third party waives privilege. *Id.* at 1467.

31. Different parties have a common interest, however, only "where they have an identical legal interest in the subject matter of a communication between an attorney and a client concerning legal advice." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 140 (N.D. Ill. 1993). "The interest must be identical, not similar, and be legal, not solely commercial." *Id*. Moreover, "[t]he common interest doctrine, of course, protects only those documents that otherwise would have been privileged in the origin." *Zitzka v. Village of Westmont*, 2009 WL 1346256 at *3 (N.D. Ill. May 13, 2009).

32. Blue Cross/Blue Shield is a third party whom Relator has subpoenaed for documents—which is evidence enough that it and Relator are not operating under the umbrella of a shared, identical legal interest. To the contrary, whereas Relator is pursuing this case to retrieve a whistleblower reward, Blue Cross/Blue Shield has no interest in the outcome of this case whatsoever, legal or otherwise.

33. Nor has Relator given any explanation of how his communications with Blue Cross/Blue Shield are privileged, even if a common interest could theoretically exist in this circumstance. *Zitzka*, 2009 WL 1346256 at *3.

34. Additionally, even if there was any such privilege, Relator has waived it. Relator cannot selectively produce purportedly privileged communications of his choosing while withholding others. *Chinnici v. Cent. Dupage Hosp. Ass'n*, 136 F.R.D. 464, 465 (N.D. Ill. 1991), *order clarified*, No. 89 C 07752, 1991 WL 127606 (N.D. Ill. July 10, 1991) ("A party cannot selectively divulge privileged information without impairing its attorney-client privilege as to the rest of that information concerning the same subject.") (internal quotation omitted). The selective production effectuates a waiver. *Id*.

35. Lastly, as to the emails with the U.S. Department of Health and Human Services that Relator seemingly produced only partly, that is indefensible as a matter of civil discovery, and to date, Relator has not defended it but rather refused to address the issue.

For the foregoing reasons, Defendants respectfully request that the Court grant this motion and order Relator to produce responsive communications with Blue Cross/Blue Shield (not limited to after the discovery cut-off), and to make a complete production of responsive communications with the U.S. Department of Health and Human Services.

Dated: November 30, 2018 Respectfully submitted,

By: /s/ *Joseph L. Motto*

Dan K. Webb
Joseph L. Motto
Jeffrey J. Huelskamp
Michael D. Claus
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
jmotto@winston.com
jhuelskamp@winston.com
mclaus@winston.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 30, 2018, the foregoing document was served on all counsel of record via the Court's ECF system.

*/s/ Joseph L. Motto*